162 P.3d 669 (2007)
TOWN OF GILBERT PROSECUTOR'S OFFICE, Petitioner,
v.
The Honorable Margaret H. DOWNIE, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,
Mitchell Michael Matykiewicz, Real Party in Interest.
No. 1 CA-SA 07-0078.
Court of Appeals of Arizona, Division 1, Department D.
July 24, 2007.
*670 Lynn R. Arouh, Gilbert Town Prosecutor by Denise E. Boode, Assistant Town Prosecutor, Gilbert, Attorneys for Petitioner.
Robert A. Butler, Phoenix, Attorney for Real Party in Interest.

OPINION
WINTHROP, Judge.
¶ 1 After a bench trial, the Gilbert Municipal Court found Mitchell Michael Matykiewicz guilty of contracting without a license and awarded restitution to the homeowners/victims, as required by Arizona's restitution statutes, for the full amount of the payments they made to Matykiewicz. On appeal, the superior court vacated the restitution order and remanded for the municipal court to determine the victims' economic loss. The Town of Gilbert Prosecutor's Office ("Petitioner") filed a petition for special action, arguing that the superior court erred in vacating the restitution order because the full amount of the payments the victims made to Matykiewicz constitute economic loss for restitution purposes.
¶ 2 In support of its argument, Petitioner relies on State v. Wilkinson, 202 Ariz. 27, 30-31, ¶ 16, 39 P.3d 1131, 1134-35 (2002), in which the Arizona Supreme Court determined on the basis of Arizona statutory law that the loss the victims suffered that was subject to restitution consisted of the money they paid to an unlicensed contractor because that was the loss directly caused by the criminal conduct. Concluding that our supreme court meant what it said in Wilkinson, and heeding that court's caution not to consider succeeding causal events and, therefore, consequences that do not flow directly from the unlicensed contractor's criminal conduct, we accept jurisdiction and grant relief.

FACTS AND PROCEDURAL HISTORY
¶ 3 Through a business known as MLM Construction Services ("MLM"), Matykiewicz made a series of written proposals to construct a swimming pool and make numerous other improvements to the victims' Gilbert home. Work began, and although Matykiewicz personally performed some of the work, most of it was done by individuals under Matykiewicz's supervision. Over the course of the next ten months, the victims paid $52,784.22 to MLM and did not pay anyone else who worked on the job. Matykiewicz personally endorsed the victims' checks. The victims were unhappy with the progress and quality of the work performed, so they contacted the Registrar of Contractors, where they learned that neither Matykiewicz nor MLM was licensed as a contractor. Matykiewicz was charged with contracting without a license, a class one misdemeanor. See Ariz.Rev.Stat. ("A.R.S.") §§ 32-1151 (2002), -1164 (2002).
¶ 4 A bench trial ensued in the Gilbert Municipal Court. Matykiewicz claimed that he was merely a consultant on the victims' project  retaining only a $2,500 consulting fee  and had paid the remainder of the money received from the victims to licensed subcontractors who actually performed the work.[1] Noting that the bid had been written *671 by MLM and that MLM was the payee on every check tendered by the victims, the court convicted Matykiewicz of contracting without a license in violation of A.R.S. § 32-1151.
¶ 5 Immediately after trial, the municipal court proceeded to the restitution hearing. Relying on Wilkinson, the prosecutor argued that the victims were entitled to restitution in the full amount they paid to Matykiewicz. Matykiewicz argued that requiring him to make restitution of the full amount paid to him would result in a windfall to the victims and that he should be liable for only the amount he claimed to have retained. Acknowledging Wilkinson, the municipal court ordered Matykiewicz to pay $52,784.22 in restitution.[2]
¶ 6 Matykiewicz appealed to the Maricopa County Superior Court, see A.R.S. §§ 22-371 (2002), -425 (2002), arguing that the municipal court erred in ordering that he pay restitution in the full amount of $52,784.22. Finding that "the record in the case at bar is not adequately developed regarding incomplete or faulty work," the superior court vacated the restitution order and remanded to the municipal court for a new restitution hearing "to establish the extent of the [victims'] economic loss."[3]
¶ 7 The State, through the Gilbert Town Prosecutor, filed a motion for rehearing, arguing that "the amount of the [victims'] economic loss is the full amount of their payments to [Matykiewicz] pursuant to the contract" and that "[a]ny consideration of faulty or incomplete work is expressly prohibited by [Wilkinson]." The superior court denied the motion. The municipal court set the case for a sentencing/restitution hearing on April 26, 2007.
¶ 8 On April 16, 2007, Petitioner filed a petition for special action and requested an interlocutory stay of proceedings. The superior court denied Petitioner's interlocutory stay request, and on April 19, 2007, this court granted the stay request pending disposition of the petition for special action.

JURISDICTION
¶ 9 We accept jurisdiction of the petition for special action for multiple reasons. Petitioner lacks any further remedy by direct appeal because the superior court rendered its judgment on appeal from the municipal court. See A.R.S. § 22-375 (2002); Guthrie v. Jones, 202 Ariz. 273, 274, ¶ 4, 43 P.3d 601, 602 (App.2002); Ariz. R.P. Spec. Act. 1(a). Further, the petition raises a pure question of law that is one of first impression, appears likely to continue arising until it is resolved, and is one upon which lower courts, lacking appellate guidance, have rendered inconsistent judgments. See Guthrie, 202 Ariz. at 274, ¶ 4, 43 P.3d at 602; Mack v. Cruikshank, 196 Ariz. 541, 543, ¶ 1, 2 P.3d 100, 102 (App.1999); Vo v. Superior Court, 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992).

ANALYSIS
¶ 10 In Arizona, the legislature has created a statutory scheme that sends a very clear signal: Contractors who engage in contracting without a license do so at their own peril. For example, a contractor may not commence or maintain a civil action to collect compensation for services requiring a license if the contractor was not licensed when the contract sued upon was entered and when the alleged cause of action arose. A.R.S. § 32-1153 (2002).[4] Additionally, an unlicensed *672 contractor may be charged criminally for contracting without a license, see A.R.S. §§ 32-1151, -1164, as occurred in this case to Matykiewicz, and be required to pay restitution to his or her victims.
¶ 11 Under A.R.S. § 13-603(C) (Supp. 2006),[5] victims of criminal acts are entitled to restitution for the full amount of their economic loss:
If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime . . . in the full amount of the economic loss as determined by the court. . . .
¶ 12 "Economic loss" is defined in A.R.S. § 13-105(14) (Supp.2006) as follows:
"Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.
Additionally, A.R.S. § 13-804(B) (2001) directs that, in ordering restitution for economic loss pursuant to § 13-603(C) or § 13-804(A), "the court shall consider all losses caused by the criminal offense for which the defendant has been convicted." "These statutes, considered together, define those losses for which restitution should be ordered." Wilkinson, 202 Ariz. at 29, ¶ 7, 39 P.3d at 1133.
¶ 13 In Wilkinson, our supreme court held "that the [restitution] statutes direct a court to award restitution for those damages that flow directly from the defendant's criminal conduct, without the intervention of additional causative factors." Id. In that case, the court differentiated between money paid by the victims to the defendant (Porter) as part of the original contract and those losses incurred by the victims as the result of poor and/or unfinished work:
When Porter, presenting himself as a licensed contractor, entered agreements with [the victims] to provide contracting services, he violated A.R.S. section 32-1151. As a direct result of Porter's offer to act as a licensed contractor, [the victims] agreed to pay, and did pay, all or a portion of the amounts due under their agreements with Porter. Porter's criminal actions directly caused those losses. Indeed, the original conception of restitution, and the form with the most direct link to criminal conduct, is that
of forcing the criminal to yield up to his victim the fruits of the crime. The crime is thereby made worthless to the criminal. This form of criminal restitution is sanctioned not only by history but also by its close relationship to the retributive and deterrent purposes of criminal punishment.

United States v. Fountain, 768 F.2d 790, 800 (7th Cir.1985). Under Arizona's statutes, these victims are entitled to recover their payments to Porter as restitution.
A different result obtains, however, as to the expenses the victims incurred because Porter failed to complete the work he contracted to do or did so in a faulty manner. We agree with the court of appeals that Porter's criminal conduct of contracting without a license did not cause these losses. These losses would not have occurred without the concurrence of a second causal event, Porter's unworkmanlike performance. *673 Therefore, the losses incurred as a result of Porter's poor and unfinished work constitute indirect damages and cannot qualify for restitution.
Id. at ¶¶ 9-10. Our supreme court further noted that limiting the determination of damages to only those damages directly caused by the crime of contracting without a license avoided conflicts between civil liability and criminal sentencing and "fit[] squarely within the goals of criminal punishment." Id. at 29-30, ¶¶ 11-13, 39 P.3d at 1133-34.
¶ 14 Applying Wilkinson, we conclude that the municipal court was required to order restitution equal to the amount the victims paid to Matykiewicz pursuant to their contract with him because those payments were "the fruits of the crime." As in Wilkinson, "[t]he loss the victims suffered consisted of the monies they paid to [Matykiewicz], a loss directly caused by [Matykiewicz's] criminal conduct." Id. at 30, ¶ 16, 39 P.3d at 1134. In other words, all payments made by victims to an unlicensed contractor under a contract, unless previously refunded, constitute economic loss subject to restitution.
¶ 15 Matykiewicz argues that he should not have to repay the victims the full amount of their payments to him because he paid out most of those funds to subcontractors who performed the work. But Matykiewicz's alleged decision to subcontract the work he agreed to perform under his contract with the victims was a second causal event that did not impact the underlying criminal act of contracting without a license and therefore, under the reasoning in Wilkinson, cannot be considered when determining the victims' economic loss subject to restitution. Whether the individuals Matykiewicz chose to assist him were employees or subcontractors makes no difference with regard to the restitution he must pay because any consideration of indirect or succeeding events, including his apparent decision to enter contracts with subcontractors and the completeness or quality of the work, is prohibited under Wilkinson's restitution analysis. Further, the fact that Matykiewicz may lack civil recourse to collect the money he purportedly distributed to subcontractors does not affect the victims' economic loss. The victims are entitled to restitution in the full amount they paid to Matykiewicz. Because the municipal court calculated the amount of restitution based on the actual amount paid to Matykiewicz by the victims, that court's calculation was not erroneous and its order should not have been vacated.
¶ 16 In addition to the Arizona Supreme Court's reasoning in Wilkinson, public policy supports our conclusion that the full payments the victims made to Matykiewicz constitute economic loss for restitution purposes. The legislature has enacted its statutory construct requiring that contractors be licensed "to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." Crowe, 202 Ariz. at 115, ¶ 7, 41 P.3d at 653 (quoting Aesthetic Prop. Maint., 183 Ariz. at 77, 900 P.2d at 1213). Restitution as a criminal remedy comprehends not only forcing a criminal to yield to the victim the fruits of the crime, thereby making the crime worthless to the criminal, but also a close relationship to the retributive and deterrent purposes of criminal punishment. Fountain, 768 F.2d at 800. It is not unusual for an unlicensed contractor in a position similar to that of Matykiewicz to complain about equity, see, e.g., Crowe, 202 Ariz. at 117, ¶ 18, 41 P.3d at 655, and although the result may be harsh in this case, it is nonetheless consistent with public policy and Wilkinson. We will not act in equity in disregard of such policy merely to accommodate someone who has violated Arizona's statutory provisions.
¶ 17 Matykiewicz nevertheless argues that this result does not comport with the general restitution principle that victims should not be made more than whole. See William L., 211 Ariz. at 239, ¶ 12, 119 P.3d at 1042; State v. Howard, 163 Ariz. 47, 51, 785 P.2d 1235, 1239 (App.1989). However, the victims receive as restitution only that which they have paid to Matykiewicz pursuant to their contract with him. Although the victims also ultimately will retain the presumed benefit of Matykiewicz's construction work, if Matykiewicz fails to disgorge any of the proceeds the victims paid him, he has received a benefit from his criminal activity, a result that is *674 inconsistent with the policy underlying restitution and the parameters of Wilkinson.
¶ 18 Under Wilkinson, any consideration of the quality, value, and completeness of the work provided by Matykiewicz and the individuals working for him must be addressed in a civil suit. That such a civil remedy may not exist for an unlicensed contractor, see A.R.S. § 32-1153,[6] is a matter that contractors such as Matykiewicz must broach with the legislature. See generally Crowe, 202 Ariz. at 117, ¶ 18, 41 P.3d at 655.

CONCLUSION
¶ 19 We accept jurisdiction and grant relief because the superior court erred in vacating the municipal court's restitution order. Pursuant to Wilkinson, restitution should be in the full amount of the victims' payments to the unlicensed contractor under the contract. Accordingly, the superior court's order vacating the municipal court's restitution order is reversed, and the matter is remanded to the municipal court for reimposition of sentence.
CONCURRING: DIANE M. JOHNSEN, Presiding Judge.
HALL, Judge dissenting.
¶ 20 As the supreme court explained in Wilkinson, our legislature focused on two primary purposes in enacting Arizona's statutory scheme requiring restitution: "reparation to the victim and rehabilitation of the offender." 202 Ariz. at 30, ¶ 13, 39 P.3d at 1134. Thus, a crime victim is entitled to be fully compensated by the defendant for any damages that flow directly from his criminal conduct, A.R.S. §§ 13-105(14), -603(C), and -804(B), thereby making the crime "worthless to the criminal." 202 Ariz. at 29, ¶ 9, 39 P.3d at 1133 (quoting United States v. Fountain, 768 F.2d 790, 800 (7th Cir.1985)). Applying these principles in Wilkinson, the court determined that the victims were entitled to recover as restitution the amount that each victim paid the unlicensed contractor but characterized any additional sums the victims paid to repair faulty or incomplete work as indirect and consequential losses that are not recoverable as restitution in a criminal case. Id. at ¶¶ 9-10; see § 13-105(14) ("Economic loss does not include . . . consequential damages.").
¶ 21 The facts of this case do not involve an issue of consequential loss; Wilkinson therefore does not speak directly to the issues before us. Instead, I believe we should be guided by two related principles in determining whether the trial court must reduce the restitution award by any increase in value of the victims' property attributable to the construction work provided by Matykiewicz and the individuals working for him. First, although a victim is entitled to restitution in the full amount of his economic loss, he is not entitled to be made more than whole by receiving a windfall. See, e.g., In re William L., 211 Ariz. 236, 239, ¶¶ 11-12, 119 P.3d 1039, 1042 (App.2005) (explaining that, under Arizona's statutory scheme, victims who suffer an economic loss are entitled to be restored to their "economic status quo that existed before the crime occurred"; however, "the court may not order restitution that would make the victim more than whole."); State v. Ferguson, 165 Ariz. 275, 278, 798 P.2d 413, 416 (App.1990) (trial court erred by failing to reduce restitution amount by value of stolen property returned to owners); State v. Howard, 163 Ariz. 47, 51, 785 P.2d 1235, 1239 (App.1989) (affirming reduction of restitution based on a $100,000.00 settlement payment received by the victim's family in a civil wrongful death action). The second principle, which follows from the purpose of restitution as rehabilitative and not punitive, is that a criminal should not be ordered to pay as restitution an amount that exceeds any economic benefit he (or his cohorts) derived from committing the crime.
¶ 22 The majority's holding may result in the victims receiving a windfall and Matykiewicz paying substantially more restitution than any profit he received from committing *675 the crime.[7] I disagree that Wilkinson compels such a result. Instead, the restitution in this case should be in an amount that compensates the victims for their actual out-of-pocket loss without permitting Matykiewicz to profit from the crime. See ABA Standards for Criminal Justice 18-3.15(c)(i) (3d ed. 1993) ("The [reparation] sanction should be limited to the greater of the benefit to an offender or actual loss to identified persons or entities.").
¶ 23 In summary, the majority's holding undermines the reparative and rehabilitative goals of restitution by permitting victims of unlicensed contractors to receive potential windfalls.[8] Therefore, I respectfully dissent.
NOTES
[1] During his testimony, Matykiewicz identified two subcontractors whom he had allegedly hired, and he also claimed that he had a list of the subcontractors used on the job, although he did not produce the list. Matykiewicz further claimed that he was responsible for purchasing some of the materials used to complete the job. However, neither during trial nor at the subsequent restitution hearing did Matykiewicz offer documentary evidence as proof of his payments to others.
[2] The court also placed Matykiewicz on probation and ordered that he pay a mandatory fine and time payment fee.
[3] Citing In re William L., 211 Ariz. 236, 119 P.3d 1039 (App.2005), the superior court also stated that the municipal court "may not order restitution that would make the victims more than whole," see id. at 239, ¶ 12, 119 P.3d at 1042; however, the court further stated that "any restitution award on remand is not limited to the $2500 amount advocated by [Matykiewicz]."
[4] See also Crowe v. Hickman's Egg Ranch, Inc., 202 Ariz. 113, 116-17, ¶ 17-18, 41 P.3d 651, 654-55 (App.2002) (declining to recognize a judicial exception for the equitable argument of ratification); B & P Concrete, Inc. v. Turnbow, 114 Ariz. 408, 410, 561 P.2d 329, 331 (App.1977) ("In barring suit by an unlicensed contractor, there seems little doubt that the legislative intent is to furnish protection to the public by strict licensing requirements even where harsh consequences fall upon those who do contracting work in good faith without an appropriate license."). But see Aesthetic Prop. Maint., Inc. v. Capitol Indem. Corp., 183 Ariz. 74, 77-78, 900 P.2d 1210, 1213-14 (1995) (holding that substantial compliance with the contractor licensing requirements could be adequate to satisfy the policy of § 32-1153); cf. Bentivegna v. Powers Steel & Wire Prods., Inc., 206 Ariz. 581, 586-88, ¶¶ 18-24, 81 P.3d 1040, 1045-47 (App.2003) (declining to interpret § 32-1153 as providing for an "automatic restitution" remedy in a civil action).
[5] Because the legislature has not revised this statute since 2001, see 2001 Ariz. Sess. Laws, ch. 334, § 6 (1st Reg.Sess.), we cite the current supplemental version of this statute. Similarly, we cite the current version of other statutes in which no changes material to this decision have occurred since Matykiewicz committed the crime of contracting without a license.
[6] But see Butch Randolph & Assocs., Inc. v. Int'l Fid. Ins. Co., 212 Ariz. 550, 553, ¶¶ 14-15, 136 P.3d 232, 235 (App.2006) (holding that an unlicensed subcontractor that did not perform any installation work and instead utilized a licensed contractor for such work was exempt from the licensing requirement and therefore could recover the value of the materials it provided in a civil suit).
[7] The majority claims that Matykiewicz will receive a benefit from his criminal activity if he "fails to disgorge any of the proceeds paid to him by the victims." Supra ¶ 17. This assertion is logically correct only to the extent that Matykiewicz profited from his dealings with the victims. For example, if one gives credence to Matykiewicz's claim that he retained only a consulting fee of $2,500 and paid the remainder to the licensed subcontractors who actually performed the work, he would profit only if he were ordered to pay restitution less than $2,500.
[8] One of the rationales articulated in Wilkinson for limiting restitution to damages that flow directly from a defendant's criminal conduct was a concern that defendants not be deprived of rights attendant to a civil trial. 202 Ariz. at 30, ¶ 11, 39 P.3d at 1133. Ironically, under the majority's holding, the victims might receive a restitution award in an amount more than they would be awarded as damages in a civil lawsuit. See Morris v. Achen Constr. Co., Inc., 155 Ariz. 507, 510, 747 P.2d 1206, 1209 (App.1986) (holding that unlicensed contractor may assert recoupment defense in civil lawsuit by homeowner), rev'd in part and vacated in part on other grounds, 155 Ariz. 512, 747 P.2d 1211 (1987).