985 P.2d 513

**STATE of Arizona, Appellee,**

v.

**Elbert HARRISON, Jr., Appellant.**

**No. 1 CA–CR 97–0471.**

Court of Appeals of Arizona, Division 1, Department D.

July 16, 1998.

Review Granted Dec. 7, 1998.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel Criminal Appeals Section and Diane M. Ramsey Assistant Attorney General Attorneys, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender Attorneys, Phoenix, for Appellant.

**30**

## OPINION

WEISBERG, Judge.

¶1 Elbert Harrison, Jr. ("defendant") appeals from his convictions and sentences on one count of unlawful flight from a law enforcement vehicle and three counts of aggravated assault. For the following reasons, we affirm the convictions, vacate the sentences imposed by the trial court, and remand this case for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Department of Public Safety ("DPS") Motorcycle Officer Brian Swanty ("Officer Swanty") was patrolling U.S. Route 60 on July 1, 1996, when defendant's vehicle approached from behind at approximately 100 miles per hour, forcing Officer Swanty's motorcycle onto the emergency shoulder of the highway. Defendant's vehicle then swerved across several lanes of traffic and proceeded up the Alma School Road exit ramp. Officer Swanty activated his lights and siren and pursued defendant's vehicle. Defendant turned left through a red light and drove north on Alma School Road at high speed for approximately four tenths of a mile. He then turned east on Grove Avenue and north into a bank parking lot where he came to a stop.

¶3 Defendant emerged from the car and charged at Officer Swanty, yelling obscenities. Officer Swanty drew his pistol and ordered defendant to stop, which he did, although he continued shouting obscenities and threatened to forcibly insert Officer Swanty's sidearm into his rectum. Believing that the danger had subsided, Officer Swanty holstered his pistol. Defendant shouted additional obscenities and threats.

¶4 Defendant refused to comply with Officer Swanty's continuing commands to desist, and approached Officer Swanty a second time. Officer Swanty removed a canister of pepper spray from his belt and threatened to spray defendant with it if defendant did not drop to the ground. Defendant continued to approach and stated his intention to forcibly insert the pepper spray canister into Officer Swanty's rectum. Officer Swanty sprayed defendant's face with pepper spray. At this point, defendant "went ballistic" and reiterated some of the graphic threats he had made earlier. Fearing a physical confrontation, Officer Swanty retrieved a baton, which defendant threatened to forcibly insert into Officer Swanty's rectum along with the other weapons.

¶5 Although defendant's eyes were watering and beginning to shut, he returned to his car, put the transmission into reverse, and accelerated toward Officer Swanty. Officer Swanty took refuge behind some trees, then returned to his motorcycle and pursued defendant, who had fled in his vehicle a second time.

¶6 During the second chase, defendant went north on Alma School Road, driving erratically and reaching speeds of 80 to 85 miles per hour. Defendant "slammed on the brakes," reversed direction, drove south on Alma School Road, and turned into an apartment complex parking lot. When defendant's car reached a dead end, defendant exited the vehicle, scaled a locked gate, and fled on foot. Other police officers arrived, joined in the pursuit, and caught up with defendant on an apartment patio.

¶7 After brawling with and cursing at the police officers, defendant calmed down and agreed to handcuff himself. Although it was against policy, the arresting officers permitted defendant to put the handcuffs on in front of his body. Police brought defendant to a DPS station where defendant performed a "rap" song which featured the words, "fuck the police."

¶8 Police later transported defendant to the Identification Bureau facility of the Phoenix Police Department. There, Officer Swanty and DPS Officer Arias were standing with defendant when an altercation developed nearby involving other police officers and another arrestee. Defendant spoke with the other arrestee, and when a Phoenix Police Sergeant tapped defendant on the arm and indicated that he should move away from the fight, defendant told him, "Fuck you."

¶9 Officer Swanty determined there was an outstanding misdemeanor warrant for defendant's arrest and informed defendant of

that fact. Defendant became "upset and enraged" and "very aggressive and violent." When defendant noticed that Phoenix Police Sergeant Robert Seils was looking at him, he turned to him and said, "Fuck you, too, you cracker." Defendant constantly cursed nearby police officers, calling them "white devils," and using other racial epithets. Sergeant Seils directed Officers Swanty and Arias to handcuff defendant's hands behind his back, at which point defendant stated, "Fuck you, you ain't touching me.". Defendant—handcuffs still attached—refused to cooperate, "push[ed] and shov[ed]" the officers, made additional obscene comments, and threatened further violence.

¶ 10    Defendant then went after Officer Arias with clenched fists. Officer Arias punched defendant, and another brawl ensued. Officer Arias sprayed defendant with pepper spray, and defendant again "went ballistic," pushing Officer Arias into a counter and kicking and punching him. When Officer Swanty pulled defendant off Officer Arias, he and defendant fell to the ground. Defendant arose and commenced kicking and punching Officer Swanty.

¶ 11    The pepper spray had less effect on defendant than on other nearby police officers who were temporarily disabled but who eventually regrouped and pulled defendant off Officer Swanty. Defendant kicked Sergeant Seils three times. After more fighting, cursing, and threatening from defendant, four or five police officers gained control of defendant and restrained his legs with a set of "hobbles." Officers Swanty, Arias, and Seils all sustained minor physical injuries.

¶ 12    A Maricopa County grand jury returned an indictment charging defendant with one count of unlawful flight from a pursuing law enforcement vehicle and three counts of aggravated assault (one count each referring to defendant's actions against Officers Swanty, Arias and Seils) in violation of Arizona Revised Statutes Annotated ("A.R.S.") sections 28–622.01 and 13–

1204(A)(5) (Supp.1997), respectively.[1] The case proceeded to a jury trial. Defendant developed a self-defense theory largely on the strength of his own testimony. He argued that the officers were the aggressors, that they overreacted and used excessive force, and that defendant was justified in using force to protect himself. The jury rejected defendant's theory and convicted him on all counts. The trial court sentenced defendant to aggravated, enhanced prison terms of three years on the unlawful flight conviction, and 2.25 years on the aggravated assault convictions,[2] all sentences to be served concurrently.

¶ 13    Defendant timely appealed. This court has jurisdiction to adjudicate the appeal. *See* Ariz. Const. art. VI, § 9; A.R.S. §§ 12–120.21(A)(1), 13–4031, 13–4033(A)(1) (Supp.1997).

## ISSUES

1.  Whether the trial court was within its discretion in admitting defendant's statement, uttered while he was in custody and being transported to the police station, that if he had a gun, Officer Swanty would be bleeding in the parking lot;

2.  Whether the prosecutor tainted the verdicts by implying in closing argument that defendant probably committed the aggravated assaults in this case because he had a prior conviction for aggravated assault; and

3.  Whether the trial court failed to articulate any aggravating factors to support an aggravated sentence.

## ANALYSIS

1.  *The trial court was within its discretion in admitting defendant's statement concerning what would have happened to Officer Swanty if defendant had been armed with a gun.*

1.  The grand jury did not indict defendant for his attempt to run down Officer Swanty with his car.

2.  In reviewing the record, we find that there is a discrepancy relating to the sentence for Count III, aggravated assault, between the sentencing

transcript and the sentencing minute entry. We would normally correct this, but because we are vacating the sentences and remanding here, we do not do so.

¶14 DPS Officer Richard Purvis ("Officer Purvis") was in the patrol car with defendant while defendant was being transported to the police station. Officer Purvis testified, over a defense objection, that while en route defendant:

made the statement in reference to the weapon, that if he had a gun, they'd [Defendant and Officer Swanty] both be bleeding in the [bank] parking lot at that point.

Defendant contends on appeal that the court abused its discretion in admitting this statement because the statement was irrelevant, and that even if relevant its potential for unfair prejudice clearly outweighs any probative value it may have. We disagree.

■ ¶15 Relevant evidence is generally admissible. *See* Ariz. R. Evid. 402. Evidence is relevant, i.e., has "probative value," if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401. The statement had probative value.

¶16 The State charged defendant with aggravated assault. His defense rested on the theory that police used excessive force and that his response—the actions charged as assault—was justified. Defendant's statement concerning what he would have done if he had possessed a gun was relevant because it showed his state of mind toward one of the victims shortly before the assaults. It evinced his desire to harm Officer Swanty. Accordingly, the statement made it more likely that he assaulted Officer Swanty and the other two victims and less likely that he was merely defending himself against the use of excessive force.

¶17 The case defendant cites, *State v. Ballantyne,* 128 Ariz. 68, 623 P.2d 857 (App. 1981), is readily distinguishable. There, Division II of this court held that the trial court erred in permitting the prosecution to examine the defendant concerning his putative past affiliation with the Hell's Angels. *See id.* at 71, 623 P.2d at 860. Unlike here, the State was unable to articulate, and this court

was unable to discern, a purpose for admission of such evidence beyond its indication of the defendant's bad character. *See id.* In this case the trial court expressly recognized that the statement went to defendant's "state of mind with regard to the aggravated assault." On the other hand, the State's cases are on point and demonstrate how similarly prejudicial statements may be deemed admissible for the purpose of showing a defendant's mental state at the time of committing a violent crime. *See State v. Mincey,* 141 Ariz. 425, 435, 687 P.2d 1180, 1190 (1984) (defendant's statements that he "wanted to cut down a shotgun 'in case he ever get (sic) hassled by pigs' " and that he would use the shotgun to "kill a pig if they (sic) get in my way" were admissible to prove premeditation in a homicide case where defendant asserted self-defense); *State v. Spoon,* 137 Ariz. 105, 111, 669 P.2d 83, 89 (1983) (defendant's statement that victim "deserved it" because he "got up and slapped" defendant was probative and admissible to show defendant's state of mind at the time of the killing).

¶18 As the State notes, the prosecutor was careful *not* to elicit testimony of defendant's other statements in the squad car concerning his gang affiliation and the fact that he had shot someone in the past.[3] There is a distinction between such evidence (which did not go to defendant's state of mind and would be excluded under Rule 404 and *Ballantyne* ) and defendant's statement.

¶19 Additionally, contrary to defendant's assertion, the statement was close enough in time to the event to be relevant. Finally, because the evidence was not admitted to establish bad character and propensity to act in conformity therewith, defendant's due process argument also fails.

■ ¶20 Defendant further contends that the trial court abused its discretion in applying Rule 403 of the Arizona Rules of Evidence to defendant's statement. Rule 403 states:

Although relevant, evidence may be excluded if its probative value is **substantial-**

3. At the time defendant committed the crimes in this case, he was on parole following conviction and imprisonment for aggravated assault based on an incident where he shot a rival gang member.

**ly outweighed** by the danger of unfair prejudice ...

(Emphasis added.)

¶ 21 The trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice. Thus, it has broad discretion in deciding the admissibility. *See State v. Via,* 146 Ariz. 108, 122, 704 P.2d 238, 252 (1985). This court views the evidence in the "light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *State v. Castro,* 163 Ariz. 465, 473, 788 P.2d 1216, 1224 (App.1989).

¶ 22 Defendant offers no analysis on this point. We have already addressed the relevance of the statement. We further find that its potential for unfair prejudice was slight. Numerous witnesses testified to defendant's aggressive, assaultive behavior. Defendant injured the victims and seemed determined to inflict more serious injuries if other police officers had not intervened. The testimony of the State's witnesses established that in each encounter with police, defendant was enraged, verbally abusive, threatening, and physically violent. Given the totality of the evidence, defendant's statement concerning what he would have done with a gun cannot have had much additional impact. Thus, the trial court's decision to admit the statement was within its discretion.

2. *The prosecutor's comment in closing argument concerning defendant's prior conviction did not influence the verdict or deprive defendant of a fair trial.*

¶ 23 After argument and a hearing under Rule 609 of the Arizona Rules of Evidence, the trial court permitted the State to impeach defendant with a prior felony conviction for aggravated assault. The trial court's ruling did not "sanitize" the prior conviction; it permitted the prosecutor to refer to the nature of the crime. That aspect of the ruling is within Rule 609 and is not in dispute. *See State v. Moya,* 138 Ariz. 12, 14, 672 P.2d 964, 966 (App.1983). In an apparent effort to "draw the sting," defense counsel elicited the fact and nature of defendant's prior felony conviction during direct examination.

¶ 24 During closing argument, the prosecutor made the following comments:

But then we've heard a different side of the story from the defendant, or partially different side of the story, because he's on the stand, he's admitted he was provoking Officer Swanty at the stop, but it's your job, ladies and gentlemen, to determine the believability, the credibility of witnesses. It's your job to decide whether you want to believe some of what a witness says, none of what a witness says or all of what a witness says. It's up to you to decide that, ladies and gentlemen. And you'll be instructed that one of the things you can consider when you want to determine whether or not to believe a witness, especially the defendant, when the defendant's testifying, if you want to believe the defendant's testimony, is the fact that he has a prior felony conviction. When you decide whether you want to believe who was the aggressor, you can take into consideration the fact that he was convicted of aggravated assault.

At that point defense counsel objected that the prosecutor was improperly urging the jury to infer that defendant was the aggressor based on his prior aggravated assault conviction. The prosecutor countered that he was urging the jury to consider the prior conviction in assessing the believability of defendant's claim that he was not the aggressor. The trial court sustained the objection and instructed the jury to disregard the prosecutor's "last statements and not consider them for any reasons" while deliberating. The prosecutor continued his argument, saying:

Let's make a point entirely clear, when you're to consider the defendant's prior felony conviction, the fact that he was— committed aggravated assault, you're using to consider that—you're considering that when you want to determine his believability, the credibility of him. When you want to determine whether or not he's telling the truth about what he said, you can consider the fact that he was convicted of committing aggravated assault.

¶ 25 The trial court issued the following jury instruction: [4]

> Evidence that the defendant has been convicted of a felony may be considered only for the purpose of determining the credibility of the defendant's testimony. Such a conviction does not necessarily· mean that you must disbelieve the defendant. It is one of the circumstances that you may consider in weighing the defendant's testimony.

¶ 26 Defendant asks that the conviction be set aside on the basis of the prosecutor's statement, "When you decide whether you want to believe who was the aggressor, you can take into consideration the fact that he was convicted of aggravated assault." Defendant asserts that this statement went beyond the limits of Arizona Rule of Evidence 609 and offended due process.

■ ¶ 27 We agree that the statement arguably urged the jury to consider the prior aggravated assault conviction for an improper purpose; namely, to show defendant's propensity to commit assault. However, we find the statement to be harmless.

¶ 28 Defendant cites two cases in which this court reversed a conviction based on improper references to a defendant's prior drug use. *See State v. Ramirez Enriquez,* 153 Ariz. 431, 432–433, 737 P.2d 407, 408–409 (App.1987); *State v. Torres,* 162 Ariz. 70, 73–74, 781 P.2d 47, 50–51 (App.1989). Neither of these cases involved Rule 609. More importantly, both cases are distinguishable because the defendants' prior drug use in those cases was not admissible for *any* proper purpose. *Torres,* 162 Ariz. at 73, 781 P.2d at 50 ("Tracking Judge Livermore's expression of the rule [articulated in *Ramirez Enriquez* ], we repeat, the only relevance the evidence of prior drug use had in the case before us was the forbidden inference that because the defendant had used heroin in the past, he was using it now."). Here, the jury was already apprised of defendant's prior felony conviction because it was admissible.

¶ 29 Furthermore, the improper comment was not so egregious as to offend due process. *Compare State v. Long,* 148 Ariz.

295, 297, 714 P.2d 465, 467 (App.1986) (prosecutor violated defendant's due process right by making "affirmative evidence of guilt out of defense counsel's ethical behavior" where defense counsel chose not to argue defendant's testimony after concluding that defendant had perjured himself at trial, and prosecutor argued that the jury should infer defense counsel's disbelief of defendant).

¶ 30 We conclude that the arguably improper comment was harmless in this case. The jury was already aware of the prior aggravated assault conviction. The questionable reference was an isolated statement in a lengthy, otherwise proper argument on the issue of witness credibility. The trial court struck the comment from the record and instructed the jury to disregard it. The prosecutor's follow-up comments made clear that he intended for the jury to consider the prior conviction only for impeachment purposes, and the jury instructions were unequivocal on that point. *See State v. Jerdee,* 154 Ariz. 414, 418–19, 743 P.2d 10, 14–15 (App.1987) (prosecutor's comment in closing argument, which arguably shifted the burden of proof, found harmless where prosecutor followed improper comment by reiterating the principle that the State carried the burden of proof, and where trial court instructed jury that State had burden of proof). We, therefore, find no reversible error.

3. *The trial court failed to articulate aggravating factors to support the aggravated sentence.*

¶ 31 The trial court considered evidence of mitigating and aggravating factors before imposing sentence. The probation department urged presumptive sentences to be served consecutively, for a total of 7.5 years imprisonment. The prosecutor also urged consecutive sentences. The trial court, however, aggravated the sentences, but ordered that they be served concurrently.

■ ¶ 32 Defendant contends his sentences must be vacated because the trial court failed to set forth aggravating circumstances on the record. We agree.

---

**4.** This instruction is RAJI standard criminal instruction 19.

■ The controlling statute is A.R.S. section 13–702(B):

> The upper or lower term ... may be imposed only if the circumstances alleged to be in aggravation or mitigation of the crime are found to be true by the trial judge upon any evidence or information introduced or submitted to the court prior to sentencing or any evidence previously heard by the judge at the trial, **and factual findings and reasons in support of such findings are set forth on the record at the time of sentencing.**

(Emphasis added.) This statute requires the trial court to articulate its finding as to each aggravating factor. Resentencing is necessary where the trial court fails to substantially comply with this requirement. *See State v. Mahler*, 128 Ariz. 429, 431, 626 P.2d 593, 595 (1981); *State v. Holstun*, 139 Ariz. 196, 197, 677 P.2d 1304, 1305 (App.1983); *State v. Rodriguez*, 126 Ariz. 104, 107, 612 P.2d 1067, 1070 (App.1980).

¶ 33 Here, the trial court made the following statements:

> I've considered all of the factors and find the following aggravating factors to be present: For your own sake, Mr. Harrison, please learn to speak in a different fashion when you interact with the community at large. You are probably the most foul mouthed individual I have ever met. Your conduct, your words when you were first pulled over at that bank, set off a chain of events which you are now paying for. If you had seen fit to control yourself, to control your anger and deal with the situation in the manner that is warranted, you would probably not be here or you would be here facing much lesser charges. You engaged in conduct and you have acknowledged that you make no excuses for your behavior. And by that I will mean to say that you accept responsibility for your conduct. That is a good thing, Mr. Harrison, you should do that.
>
> You fled from the police. I heard all the evidence and I'm not going to repeat it. There are, I guess, some disputes about what the evidence established, but you fled from the police when you should have stopped. After that the police tried to calm you down, and then I agree with your attorney, that the events once you were taken to the station transpired very quickly and I believe that the events there were out of control.
>
> Mr. Harrison, whatever your beliefs are, whether they be personal, religious, moral, philosophical, I'm not here to question them and I'm not here to take issue with them, but you have to understand that you, like me, like your lawyer, Mr. Pappalardo, all of us live in a society where there are certain standards of behavior that are expected and we all have to follow them, Mr. Harrison. And that means respecting authority, whether it be the police or school teacher, whatever that represents, whatever we feel we have to do to get along as a civilized society. That's what we're here for. One cannot decide things are bad and then start beating up police officers because you think that that is, from your perspective and from your background, that that is the thing that's called for. If all of us did it, we would be barbarians, Mr. Harrison. The streets would not be safe for our children.
>
> I would hope that you listen to my words and the words that were spoken on your behalf by the Nation of Islam Captain and learn to channel your energy in a more positive and fruitful fashion. And if you don't, Mr. Harrison, you're going to prison for a long time. You're going to be back here shortly and that's where you're going to end out. Beating up police officers, using the kind of language, behaving like you have, that's not acceptable, Mr. Harrison. America, Arizona, is made up of diverse people. I believe people have degrees of tolerance but not to the extent that you have challenged by your behavior.

The court went on to address mitigating factors.

¶ 34 Unfortunately, these comments do not include a finding of an aggravating factor under A.R.S. section 13–702(C). The only factor identified was defendant's flight from police. But flight was an element of one of the substantive crimes and is not a factor in aggravation identified in A.R.S. section 13–702(C). Flight, therefore, could not support

a finding of aggravation unless the court found it "rises to a level beyond that which is merely necessary to establish an element of the underlying crime." *State v. Tinajero*, 188 Ariz. 350, 357, 935 P.2d 928, 935 (App. 1997) (quoting *State v. Germain*, 150 Ariz. 287, 290, 723 P.2d 105, 108 (App.1986)). Here, the trial court's only comment—"You fled from the police"—does not constitute a finding that defendant's flight exceeded the level necessary to support the flight charge. Also, defendant's flight occurred before the aggravated assaults and is thus inapplicable as an aggravating factor for those convictions.

¶ 35  The balance of the trial court's comments concerned defendant's foul language and the judge's perspective on individual responsibility. While they may be insightful and laudable, such comments do not amount to the "factual findings and reasons in support of such findings" required by A.R.S. section 13–702(C).

¶ 36  Moreover, the trial court's comments here were not in "substantial compliance" with the statute. In instances where substantial compliance has been found, the trial court's findings were the equivalent of those required by the statute. *See State v. Poling*, 125 Ariz. 9, 11–12, 606 P.2d 827, 829–30 (App.1980)(finding that the trial court's statement "this was a very brutal type of assault" could be classified "under A.R.S. § 13–702(D)(1) as an 'Infliction or threatened infliction of serious injury"); *Mahler*, 128 Ariz. at 431, 626 P.2d at 595. But here, were we to find substantial compliance, we would be effectively eliminating the requirement that trial courts articulate specific statutory factors when imposing aggravating sentences. That we will not do. *See Poling*, 125 Ariz. at 12, 606 P.2d at 830; *Mahler*.

■ ¶ 37  Although the dissent argues we should reject the rule articulated in *Holstun* and apply the harmless error doctrine to sentencing, we conclude that the reasoning articulated by the *Holstun* majority is sound.[5] If we were to apply the harmless error doctrine here, we would be allowing trial courts to aggravate or mitigate sentences without explaining to either the defendant or the community why they are doing so. Appellate courts could then sift through the record, find any factor that might support aggravation or mitigation, and declare the failure to articulate the trial court's reasoning to be harmless. This would be possible even though there might be no evidence that the factor found by the appellate court was even considered by the trial court in pronouncing the sentence. We would, in effect, be making appellate courts fact finders when it comes to sentencing. That would both violate the clear language of A.R.S. section 13–702(C) and be bad policy.

¶ 38  This is not to suggest that the record here is devoid of information or evidence that might support an aggravated sentence. Therefore, it is necessary to remand this case for resentencing in compliance with A.R.S. section 13–702(C). If the trial court articulates findings in support of an aggravated sentence, such a sentence may be imposed if the factors outweigh any mitigating factors. If not, the trial court cannot impose a term greater than the presumptive. *State v. Angle*, 149 Ariz. 499, 507, 720 P.2d 100, 108 (App.1985), *aff'd. in part, vacated in part on other grounds*, 149 Ariz. 478, 720 P.2d 79 (1986).

### CONCLUSION

¶ 39  For the foregoing reasons, we affirm defendant's convictions, vacate his sentences,

---

5.  The *Holstun* court held that:
    There is value in requiring every sentencing judge to say why he or she is enhancing or reducing a sentence. Such a practice can bring to light the judge's occasional misapprehension of the facts, it ensures that the judge is not relying on matters that are not properly aggravating or mitigating and it tends to assure that judges will give thought to whether or not each sentence, even a stipulated one, is appropriate. In the case of an aggravated sentence it reaffirms the defendant's individuality while driving home to him the severity of the consequences of his crime. In the case of a mitigated sentence it explains to the community why a convicted person is receiving a lesser sentence than others who violated the same law ... [T]he requirement that reasons for a sentence be articulated helps ensure that the process does not become purely mechanical.
    *Id.* at 197, 677 P.2d at 1305.

and remand this case for resentencing consistent with this decision.

CONCURRING: EDWARD C. VOSS, Judge.

NOYES, Judge, Concurring in part and Dissenting in part.

¶ 40 Because it makes no sense to vacate a manifestly lenient sentence on grounds that the trial court failed to state aggravating factors, I respectfully dissent from the remand order.

¶ 41 The 71–page sentencing transcript shows that the trial court knew this case well and that many aggravating and few mitigating factors existed. Defendant's criminal history was very bad, and the conduct that resulted in these convictions was outrageous. But Defendant was a proud individual with good potential and good support from those who knew him best. The trial court discussed Defendant's background and beliefs, his inability to control his anger, his role in turning a routine traffic stop into a chaotic confrontation, his attempts to beat up officers, and, in general, how his behavior went beyond the bounds of what is acceptable in a "civilized society." The court then imposed an aggravated sentence that was actually a very lenient sentence.

¶ 42 The State requested consecutive aggravated sentences totalling 9.75 years; the probation officer recommended consecutive presumptive sentences totalling 7.5 years; the trial court gave Defendant a huge break and imposed aggravated concurrent sentences totalling 3 years. Yet we remand for resentencing because the trial court did not sufficiently state aggravating factors. Ironically, we would readily affirm if the court had stated no reasons while imposing presumptive, consecutive sentences totalling 7.5 years. *See State v. Dowd,* 139 Ariz. 542, 543, 679 P.2d 565, 566 (App.1984) (noting that court must state reasons for imposing other than presumptive sentence); A.R.S. § 13–708 (1989) (mandating that court state reasons for imposing other than consecutive sentences).

¶ 43 Defendant's appellate counsel had to raise this "factors" issue because *State v.*

*Holstun,* 139 Ariz. 196, 197, 677 P.2d 1304, 1305 (App.1983), held that the failure to sufficiently state aggravating factors cannot be harmless error. The present case is a good example of why we should modify the *Holstun* rule and adopt the reasoning of the *Holstun* dissent, which noted that an error in stating aggravating factors can be harmless and that a judicial decree that it can never be harmless is an "elevation of this type of error to a status not enjoyed even where error of constitutional dimension is involved." *Id.* at 199, 677 P.2d at 1307.

¶ 44 Any errors made by the trial court while explaining its sentences were harmless beyond a reasonable doubt as to Defendant and were waived by the State (which did not appeal the court's failure to state reasons for imposing concurrent sentences). The convictions and sentences should be affirmed.