NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DEANDRE L. JAMES, *Appellant.*

No. 1 CA-CR 19-0548
FILED 5-11-2021

Appeal from the Superior Court in Maricopa County
No. CR2016-149479-001
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

KBunited, LLC, Phoenix
By Kerrie M. Nelson
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**S W A N N**, Chief Judge:

¶1             Deandre L. James appeals his convictions and sentences for fourteen counts of child prostitution, one count of involving minors in a drug offense, two counts of sexual conduct with a minor, one count of custodial interference, and one count of sex trafficking.  James challenges in particular the superior court's admission of evidence regarding his girlfriend's place of employment.  For the following reasons, we affirm.

**FACTS AND PRODECURAL HISTORY**

¶2             In February 2015, the state took custody of S.S.—just weeks before her sixteenth birthday.  The Department of Child Services ("DCS") placed S.S. in a group home in Phoenix.  There, S.S. met sixteen-year-old S.H., and they decided to run away from the group home.  After they left the home, S.H. introduced S.S. to James.  James drove S.S. to a Motel 6 where they smoked marijuana together and had sex.

¶3             The next day, James returned to pick up S.S. from where she was staying with S.H.    S.S. alleges that she told James her real age— fifteen—then James took her to "walk[ ] the track" (an expression referring to a high-crime area where prostitutes will go to work) and "explained the rules" of prostitution.  From there, S.S. began regularly "walk[ing] the track" to get customers.  Each time, James waited nearby in his truck, and S.S. brought the money she made back to him.  In return, James paid for S.S.'s hotel room, clothes, and food.  S.H. also gave S.S. advice on how to walk the track.  S.S. had two regulars as well as other customers.

¶4             After several weeks, in mid-March 2015, James drove S.S. to St. Louis, Missouri, where he introduced her to friends as "his bitch."   In response to a missing juvenile report filed by S.S.'s grandmother, St. Louis police arrested James.  A DCS representative traveled to Missouri to bring S.S. back to Phoenix, and DCS then placed S.S. in a new group home.

¶5             S.S. ran away from the new group home "immediately" and met a new friend, seventeen-year-old C.C.  S.S. stayed at C.C.'s mother's

house and continued contacting James.  When James returned to Phoenix, he took S.S. and C.C. to the Premier Inn.  S.S. asked C.C. if she "wanted to be on the team," and James talked to C.C. about prostitution, telling her he would advertise her and protect her.

¶6        The next morning, FBI special agents found S.S. and C.C. in a hotel room.  S.S. denied knowing James and denied that he was her pimp.  S.S. returned to C.C.'s mother's house and went back to the "track" and "dates" facilitated by James, though less frequently than before.  Several months later, S.S. learned that she was pregnant so she began cooperating with the FBI in their investigation of James.

¶7        In October 2016, special agents from the FBI fugitive investigations team began surveillance to try to locate James.  The agents believed James might be staying with a girlfriend, Shameka Turner, so they surveilled her residence then followed her to her workplace—a group home.  After returning to Turner's residence, the agents spotted James and arrested him.  Once he was arrested, the FBI conducted an interview with James where he admitted he knew of "Street Light," the group home where Turner worked and where S.S. had stayed initially.

¶8        James was charged with fourteen counts of child prostitution, one count of involving minors in a drug offense, two counts of sexual conduct with a minor, one count of custodial interference, and one count of sex trafficking.  At trial, the state asked an FBI special agent about how the FBI located James, which elicited testimony about his girlfriend's employment:

> Q. And, just to be clear, this was--the surveillance that you began conducting on Ms. Turner's residence was October 18th of 2016?
>
> A. Yes, ma'am, that's correct.
>
> Q. And you said that you--you or your group had followed her to her place of employment, and so you all returned to the house?
>
> A. That's correct, yes, ma'am.
>
> Q. Without saying the name of the group home, did Ms. Turner work at a group home?
>
> A. We believe so, yes, ma'am.

James later objected, arguing that this evidence was improper "other act" evidence under Ariz. R. Evid. ("Rule") 404(b). Overruling James's objection, the superior court found that the evidence did not "suggest[ ] 404(b) issues, 404(b) charges, 404(b) acts." And, the superior court ruled that Turner's place of employment "would be helpful for the jury to evaluate as to [James's] knowledge, absence of mistake, and as to . . . how he approached . . . the victims and [S.H.]."

**¶9** The jury found James guilty as charged on all nineteen counts. The court sentenced James to a total of 354.5 years in prison. James appeals.

## DISCUSSION

**¶10** James argues the superior court erred by admitting evidence of Turner's employment at a group home. We review the superior court's ruling on the admissibility of evidence for abuse of discretion. *State v. Lehr*, 227 Ariz. 140, 147, ¶ 19 (2011).

**¶11** Evidence of a defendant's "other crimes, wrongs, or acts" cannot be introduced to prove the defendant acted in conformity with that character. Rule 404(b). It is only admissible for other purposes, such as to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* To admit this "other-act" evidence under Rule 404(b), the state "must prove by clear and convincing evidence that the defendant committed the other acts; they must be offered for a proper purpose; they must be relevant; and, consistent with Rule 403, their probative value must not be substantially outweighed by the danger of unfair prejudice." *State v. Hausner*, 230 Ariz. 60, 78, ¶ 69 (2012).

**¶12** Evidence is relevant if "it has any tendency to make a fact more or less probable . . . and the fact is of consequence in determining the action." Rule 401. "The standard of relevance is not particularly high." *State v. Fish*, 222 Ariz. 109, 124 (App. 2009). The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice or confusing the issues. Rule 403.

**¶13** James argues that the employment evidence showed a pattern of specific conduct but did not fit into one of Rule 404(b)'s exceptions, so its admission was error. In response, the state argues that Rule 404(b) is wholly inapplicable because the evidence proffered does not involve a crime, wrong, or act of James himself. We agree with the state.

**¶14** James has shown no abuse of discretion in the admission of the employment evidence. First, the evidence of Turner's employment is

not other-act character evidence under 404(b). The proffered evidence shows Turner's place of employment, not a crime, wrong, or act committed by James. *See Hausner*, 230 Ariz. at 78, ¶ 69; *see also* Rule 404(b). The elicited testimony from the FBI special agent does not speak to James's character or acts, so it is not Rule 404(b) evidence as to James.

**¶15**　　　　The court's decision to admit the evidence also was not improper under Rule 403 because the evidence was relevant, and its probative value was not substantially outweighed by its prejudicial danger. The fact that James's girlfriend worked at the group home tended to show that James had reason to have some basic familiarity with the fact that a group home is a place for minors. While there was no direct evidence that James knew S.S. and S.H. came from the group home, James's relationship with them provides a circumstantial basis upon which to infer that he had some knowledge of their backgrounds. It was for the jury to decide whether to credit James's statements that he had no idea S.S. and S.H. had run away from their group home, and that he thought S.S. was 18 years old. And James put his knowledge of the girls' age at issue when he testified that he did not know that S.S. was underage. James asserted that his relationship with Turner began a year after his involvement with S.S. and S.H., and that Turner's employment was not relevant to his knowledge of S.S. and S.H.'s ages. To be sure, the record is unclear as to when James's relationship began with Turner—James began living with Turner in about October 2015. But the superior court considered these arguments and found that the evidence's probative value was not substantially outweighed by its danger of prejudice, holding:

> This conversation [between James and the FBI special agents] is not only--it's about actually multiple girlfriends and multiple girlfriends who--at least one other one, who may have worked at group homes, was the ex- before the current girlfriend, who was a girlfriend for at least a year, they were living together for a year . . . [A]lthough there is direct evidence, I do find that there is some potential circumstantial evidence that would be helpful for the jury to evaluate as to his knowledge, absence of mistake, and as to the conversations . . . and how he approached--or may or may not have approached the victims and [S.H.] . . . [and] the entire conduct between them.
>
> So, as to all of that, I--I do find that there is relevant evidence, and the probative value outweighs the prejudicial value. I do find that . . . could be considered to evaluate whether or not it

is more or less likely that he was aware the girls had been at a group home, and that, if they're at a group home, they are not only juveniles, but they should be returned to the group home, and they would not be adults.

And so, in weighing all of this and the totality of the information, I am going to deny the defense objection over this.

Trial judges are "in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice." *State v. Harrison,* 195 Ariz. 28, 33, ¶ 21 (App. 1998). James has shown no abuse of discretion.

**¶16** James argues that the evidence was unfairly prejudicial because it implied that he was recruiting children from the group home. We view "the evidence in the 'light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *State v. Ortiz,* 238 Ariz. 329, 333, ¶ 5 (App. 2015) (citation omitted). "[N]ot all harmful evidence is unfairly prejudicial." *State v. Schurz*, 176 Ariz. 46, 52 (1993). No testimony at trial ever suggested that James dated Turner "to lure young girls into prostitution" as he suggests. S.S. testified that she met James "through a friend" in March 2015, and after that, they "communicated through social media." Additionally, the objected-to testimony was brief—just three lines of trial transcript in a 16-day trial— and contained no other details. Therefore, the evidence was not unduly prejudicial.

## CONCLUSION

**¶17** For the above reasons, we affirm James's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA

6