NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BRADLEY JAMES MANSEAU, *Appellant*.

No. 1 CA-CR 25-0026

FILED 04-17-2026

Appeal from the Superior Court in Maricopa County
No. S8015CR202400095
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Carr Law Office, PLLC, Kingman
By Sandra Carr
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andew M. Jacobs and Judge Brian Y. Furuya joined.

_____

**M O R S E**, Judge:

¶1   Bradley James Manseau appeals his conviction and sentences for three counts of sexual conduct with a minor and one count of attempted sexual conduct with a minor. For the reasons set forth below, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2   Manseau's daughter Emmy (a pseudonym) accused him of sexually abusing her between the ages of four and eleven. Manseau did not always live with Emmy and served time in jail between April 2018 and October 2020. In 2024, the State indicted Manseau on three counts of sexual conduct with a minor and one count of attempted sexual conduct with a minor. The State alleged the crimes occurred between 2015 and 2021.

¶3   Trial was delayed twice. First, the State requested a continuance because a key witness, the investigating detective, was not available on the original trial dates. The State moved to continue but was also willing to accelerate trial. Manseau objected to a continuance, but Manseau's counsel was unavailable for an earlier date and expressed a preference for a later date. The court granted the continuance and delayed trial by two weeks.

¶4   The second delay occurred when the State interviewed Emmy the day before trial. Immediately following the interview, the State disclosed that she had made new abuse allegations against Manseau. The State also disclosed that another alleged Manseau victim, herself a potential Arizona Rule of Evidence ("Rule") 404(c) witness in this case, had recently made unsubstantiated allegations of sexual abuse against a third party not involved in this case (her stepfather). Manseau moved to dismiss the indictment with prejudice, alleging the State violated its *Brady* obligation by intentionally withholding exculpatory evidence, putting him in the untenable position of choosing between a speedy trial or effective assistance of counsel. The superior court denied the motion, instead granting the State's request to preclude evidence of the new allegations. The court also

2

offered to preclude the Rule 404(c) witness altogether, but Manseau disagreed because he wanted to explore using that witness's testimony to impeach Emmy. Ultimately, Manseau requested a continuance.

¶5 At trial, Emmy, then thirteen, testified to the specifics of the abuse, but had trouble remembering specific dates and prior statements. For example, she testified Manseau had attempted to abuse her in a car in 2022, even though she previously claimed it occurred in 2020. Investigating detectives also testified on a variety of topics, including discovery of recent Google searches on Manseau's phone at the time of his arrest. Manseau attempted to impeach Emmy with an alleged prior statement in which she said the abuse was a dream. Emmy disagreed that she had called the abuse a dream, and another testifying detective said he did not recall Emmy making that statement.

¶6 The State also introduced a portion of Manseau's Google search history as aberrant-sexual propensity evidence. The court had found the evidence admissible under Rule 404(c) at a pre-trial hearing. During trial, the State attempted to impeach Manseau's brother about drug use. The brother denied drug use, stating he only had a slight addiction to energy drinks. Finally, during closing arguments, the prosecutor referred to Emmy's alleged "dream" statement as "false information" and used Ted Bundy as an example of an outwardly likable individual that no one expected to commit heinous crimes.

¶7 The jury returned a guilty verdict on all four counts, and found an aggravator because Emmy suffered emotional harm. The court sentenced Manseau to life in prison on count 1, consecutive 20-year prison sentences on counts 2 and 3, and a consecutive 10-year prison sentence on count 4. Manseau timely appealed and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

¶8 Manseau raises many issues on appeal. We address them below, reviewing the facts in the light most favorable to sustaining the verdict and resolving all reasonable inferences against Manseau. *State v. Castaneda*, 254 Ariz. 9, 11, ¶ 2 (App. 2022).

## I. Emmy's Competency.

¶9 Manseau argues the court should have *sua sponte* ordered a competency hearing because Emmy's trial testimony was inconsistent and she made factually impossible claims.

3

**¶10** Because Manseau failed to object on competency grounds or request a competency hearing, we only review for fundamental error. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). Manseau must prove an error occurred, and that the error was fundamental, i.e., it (1) went to the foundation of the case, (2) took away a right essential to the defense, or (3) was so egregious it made it impossible to have a fair trial. *Id.* at 142, ¶ 21. If Manseau proves the first or second option of prong two, he must also prove he suffered a non-speculative prejudice. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006).

**¶11** Emmy was thirteen when she testified. Everyone is presumed competent to testify unless the rules of evidence or applicable statutes direct otherwise. Ariz. R. Evid. 601; *see also*, A.R.S. § 13-4061 ("In a criminal trial every person is competent to be a witness."). "Neither age, mental capacity nor feeble-mindedness renders a witness incompetent or disqualified." *Castaneda*, 254 Ariz. at 12, ¶ 16 (cleaned up). A trial court has no independent duty to examine the competency of a child over ten years old. *State v. Perez*, 109 Ariz 572, 574 (1973). The trial court has broad discretion to determine the need for a competency hearing to inquire into the witness's capacity to perceive, recollect, or communicate about the events in question. *State v. Strong*, 258 Ariz. 184, 203, ¶ 69 (2024). Notably, competency and credibility are distinct inquiries, the latter being a question of fact implicating the reliability of the testimony. *Zimmer v. Peters*, 176 Ariz. 426, 429 (App. 1993).

**¶12** There is no debate Emmy's testimony was imprecise. She approximated the years the abuse took place and could not recall specific dates. She claimed Manseau attempted to abuse her in the car in 2022, even though she previously claimed it happened in the spring of 2020. Emmy's spotty memory, inability to discuss specific dates and times, and any other inconsistencies in testimony were for the jury to consider when determining her credibility and the weight of her testimony. *See State v. Cox*, 217 Ariz. 353, 357, ¶ 27 (2007); *State v. Superior Court*, 149 Ariz. 397, 400 (App. 1986). And while the jury was entitled to decide what weight to give Emmy's difficulty with dates, if any, the State had no obligation to prove the specific date of abuse because that was not an element of the crime. A.R.S. § 13-1405.

**¶13** We are unpersuaded by Manseau's arguments. Emmy demonstrated the ability to perceive, recollect, and communicate about the events at issue. Manseau himself admits that the core issue here was her credibility—a question for the jury. We see no error, much less fundamental and prejudicial error.

4

**¶14**        Manseau makes two other related claims.  First, because the State considered impeaching Emmy for making inaccurate statements on the stand about her pre-trial interactions with the prosecution, Manseau suggests a trial court must always evaluate the victim's testimony when that happens.  But Manseau cites no legal authority for this proposition.  Second, he mentions an alternative theory—that the State improperly coached Emmy—but never develops the argument.  Passing reference to arguments in an opening brief that are not developed and supported with citations to legal authority may be treated as abandoned and waived. *Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009); ARCAP 13(a)(7)(A) (requiring briefs to support arguments with citation to legal authorities).  Therefore, we do not address them.

## II.        The Sufficiency of the Evidence Under Count IV.

**¶15**        Manseau asserts error in the superior court's failure to acquit him on Count IV, attempted sexual conduct with a minor. *See* Ariz. R. Crim. P. 20.  He insists the State presented insufficient evidence to support the conviction because he was in jail between April 2018 and October 2020 and could not have abused Emmy in April 2020, as she alleged.  He claims this is evidence of judicial bias that infected the entire trial and violated due process.

**¶16**        Manseau did not object on bias or due process grounds.   "By failing to . . . object on constitutional grounds . . . [Manseau] forfeited the right to obtain appellate relief unless he proves that fundamental error occurred." *State v. Williams*, 220 Ariz. 331, 334, ¶ 8 (App. 2008) (cleaned up).

**¶17**        Manseau instead argued the evidence was insufficient to convict.  A directed verdict of acquittal under Ariz. R. Crim. P. 20 is only appropriate where there is no substantial evidence that a reasonable juror would find sufficient to support the finding of guilt beyond a reasonable doubt. *State v. Fulminante*, 193 Ariz. 485, 493, ¶ 24 (1999).  We review the denial of the Ariz. R. Crim. P. 20 motion *de novo*, "viewing the evidence in the light most favorable to the prosecution" and asking whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶¶ 15–16 (2011) (cleaned up).  When reasonable minds can draw differing inferences from the facts, the judge has no discretion to enter a judgment of acquittal, re-weigh the facts, or disregard possible reasonable inferences—the case must be submitted to the jury. *See id.* at 563, ¶ 18.

**¶18** Here, the court assessed that the underlying problem with Emmy's testimony was her credibility. She had issues with providing specific dates and included inconsistencies with her prior statements made during the investigation. But those inconsistencies were presented to the jury, and the precise date of the offense is not an element of the crime. *See State v. Copeland*, 253 Ariz. 104, 111, ¶ 13 (App. 2022). Emmy's allegations fit within the broad time frame alleged in the indictment (2015 to 2021). And as we discussed, *supra* Part I, the jury is the proper arbiter of Emmy's credibility. *See State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013) (stating that "no rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury" (cleaned up)). The court correctly denied the motion. *See id.* at ¶ 39 (rejecting argument that Ariz. R. Crim. P. 20 motion should have been granted because of "inconsistencies in the children's testimony and the physical evidence"). Because Manseau has not shown error, he has not established a due process violation.

**¶19** Manseau's opening brief also alleged that the denial of a directed verdict demonstrated that the trial court "abandoned its role of being fair and impartial" because the trial court knew Manseau was in jail in 2020. Because the trial court correctly denied the motion, we see nothing in the record that would support such a claim, particularly given the presumption of impartiality extended to trial judges. *Cf. State v. Ellison*, 213 Ariz. 116, 128, ¶ 37 (2006) (stating that, in the context of a Ariz. R. Crim. P. 10.1 motion for change of judge based on bias, "[j]udges are presumed to be impartial." (quoting *State v. Smith*, 203 Ariz. 75, 79, ¶ 13 (2002))).

### III. The Admission of the Google Search History.

**¶20** Manseau claims the superior court deprived him of a fair trial by improperly admitting his internet search history under Rule 404(c) and failing to provide the limiting instruction required by the rule.

**¶21** Manseau objected to the evidence for lack of foundation but did not object on the grounds that the evidence denied him a fair trial. Nor did Manseau request a limiting instruction or object to the lack thereof. Therefore, we review these claims for fundamental error. *Escalante*, 245 Ariz. at 140, ¶ 12. We review the admission of the evidence for an abuse of discretion. *State v. James*, 242 Ariz. 126, 130, ¶ 11 (App. 2017). We find such abuse only if "no reasonable [trial] judge would have reached the same result under the circumstances." *State v. Armstrong*, 208 Ariz. 345, 354, ¶ 40 (2004). And we affirm the trial court's ruling if the result is "legally correct

for any reason." *State v. Carlson*, 237 Ariz. 381, 387, ¶ 7 (2015) (quoting *State v. Perez*, 141 Ariz. 459, 464 (1984)).

¶22            Rule 404(c)(1) requires the court to make specific findings: (A) that the evidence is sufficient for the trier of fact to find the defendant committed the other act, (B) committing the act is a reasonable basis to infer defendant has an aberrant sexual propensity to commit the crime charged, and (C) that the value of the evidence is not substantially outweighed by unfair prejudice or other Rule 403 balancing factors. Ariz. R. Evid. 404(c)(1). The finding under (A) must be made by clear and convincing evidence. *James*, 242 Ariz. at 131, ¶ 17.

¶23            At the pre-trial hearing, the superior court made the required Rule 404(c) findings. Then, it excluded some of the searches but found that a few, taken together, supported the inference of aberrant sexual propensity. And finally, balancing the Rule 403 and 404(c)(1)(C) factors, the court found that those searches were not too remote, too dissimilar, too infrequent, or otherwise inadmissible.

¶24            Manseau argues that the searches only evidence an adult "kink" that is irrelevant to the sexual abuse of minors. His argument fails because the search terms included explicit terms for sexual acts between a father and a daughter. Having made the requisite findings, the court did not abuse its discretion. Manseau has not shown any error in the admission of the searches and does not establish that the admission of that evidence denied him a fair trial. *See State v. Tacho*, 113 Ariz. 380, 384 (1976) (finding that where the record shows no conduct so improper or outrageous as to shock the conscience of the court and amount to a denial of appellant's rights, absence of fairness did not fatally infect the trial).

¶25            As for the jury instructions, Rule 404(c)(2) states that "[i]n all cases in which evidence of another act is admitted . . . the court shall instruct the jury as to the proper use of such evidence." The relevant comment to the 1997 amendment to the rule clarifies that, at minimum, the court should instruct the jury that the admission of the other acts does not lessen the State's burden to prove guilt beyond a reasonable doubt, and that the jury cannot convict defendant simply because it finds he committed the other act or had a predisposition to commit the charged crime. *Id.* The jury instructions did not contain the specific instructions contemplated by Rule 404(c)(2). Although neither party objected to the final instruction, the trial court erred by failing to include those specific instructions.

¶26            Under fundamental-error review, Manseau also bears the burden of establishing "the error caused him prejudice," *State v. Riley*, 248 Ariz. 154, 170, ¶ 24 (2020), but he fails to articulate a non-speculative argument the instruction prejudiced him. He suggests that the admission of the searches necessarily caused the jury to reach a decision on an improper basis like "emotion, sympathy, or horror." *See State v. Mott*, 187 Ariz. 536, 545 (1997) (stating courts should exclude relevant evidence if it "has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror").

¶27            We reject that argument for several reasons. For one, the trial court properly instructed the jury on the burden of proof, not to be influenced by prejudice, and the elements of the offenses charged, repeatedly stating that "all jurors must agree that he committed the same act which meets the elements of" the charged offense. Moreover, during closing argument, the State limited its argument to the evidence of Manseau's statements and reactions regarding the search history. On this record, including the direct testimony of Emmy as to the charged offenses, Manseau has not demonstrated prejudice from the absence of additional Rule 404(c)-specific instructions.

¶28            The trial court is best positioned to "balance the probative value of challenged evidence against its potential for unfair prejudice." *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998). Manseau only speculates that the jury may have reached a different result with the correct instructions, but speculation is not sufficient to establish the prejudice required for fundamental-error review. *See Munninger*, 213 Ariz. at 397, ¶ 14.

## IV.            Disclosure Issues and Trial Delay.

¶29            Manseau argues the superior court should have granted his motion to dismiss with prejudice once the State violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by disclosing "critical" material new evidence on the eve of trial. Manseau moved to dismiss because the State disclosed that (1) Emmy had alleged new instances of abuse for the first time at her pre-trial interview that day, and (2) a few months prior, another alleged minor Manseau victim, and potential Rule 404(c) witness in his trial, had levied an unsubstantiated sexual abuse accusation against a third party not involved in Manseau's case (her stepfather). Manseau insists that the court's denial of his motion to dismiss forced him to choose between accepting a continuance, which violated his right to a speedy trial under Ariz. R. Crim. P. 8, or proceed without investigating this new

evidence, which violated his right to a fair trial with effective assistance of counsel. He also claims that because the prosecutor and law enforcement intentionally withheld the information until the eve of the scheduled trial date, the court should have dismissed with prejudice instead of sanctioning the State with a continuance.

**¶30**　　　　We review the denial of the motion to dismiss for an abuse of discretion, affirming the court's ruling if legally correct for any reason. *State v. Espinoza*, 229 Ariz. 421, 424, ¶ 15 (App. 2012). Similarly, in discovery matters, "the trial judge has broad discretion that we review only for abuse." *Naranjo v. Sukenic*, 254 Ariz. 467, 472, ¶ 17 (2023) (quoting *State Farm Mut. Auto. Ins. v. Lee*, 199 Ariz. 52, 57, ¶ 12 (2000)). We review the trial court's ruling on sanctions for an abuse of discretion. *Armstrong*, 208 Ariz. at 353–54, ¶ 40.

**¶31**　　　　The State has an ongoing obligation to disclose any exculpatory evidence no later than seven days before trial. Ariz. R. Crim. P. 15.1, 15.6(c); *see Brady*, 373 U.S. at 87. Failure to comply with the rule allows the court to impose sanctions. Ariz. R. Crim. P. 15.7(b). To prove a *Brady* violation, Manseau must show the evidence was favorable to him because it was exculpatory or impeaching, it was unavailable at trial, and prejudice ensued. *Bands v. Dretke*, 540 U.S. 668, 691 (2004). The key question is "whether the undisclosed [exculpatory and material evidence] would have created a reasonable doubt had it been presented to the jury." *State v. Montano*, 204 Ariz. 413, 424, ¶ 52 (2003) (cleaned up).

**¶32**　　　　The prosecutor disclosed the information before trial. Therefore, Manseau cannot establish a completed *Brady* violation. Moreover, the prosecutor disclosed the information almost immediately upon discovery. The prosecutor's duty to obtain (and disclose) material extends to law enforcement agencies that investigated *the case*. Ariz. R. Crim. P. 15.1(f) ("The State's disclosure obligation extends to material and information in the possession or control of any of the following: . . . (2) any law enforcement agency that has participated in the investigation of *the case* and is *under the prosecutor's direction or control*") (emphasis added); *see also State v. Reinhardt*, 190 Ariz. 579, 585 (1997). But the Rule 404(c) witness's allegation came from a *separate case*, not *this case*. *Cf. State v. Martinez-Villareal*, 145 Ariz. 441, 449 (1985) (finding that reports prepared exclusively by a police department and disclosed for the first time through trial testimony without giving prosecutor advance notice were not in prosecutor's control). Under the circumstances, Manseau has not shown that the prosecutor attempted to evade *Brady* requirements "by keeping

[herself] ignorant or compartmentalizing information about different aspects of [the] case." *Milke v. Mroz*, 236 Ariz. 276, 283, ¶ 18 (App. 2014).

¶33          Additionally, the State offered to preclude the new inculpatory information, which the court did. And Manseau did not attempt to call the Rule 404(c) witness to the stand at trial. So, Manseau cannot meet the first *Brady* prong, much less prove a *Brady* violation.

¶34          On these facts, it was not an abuse of discretion for the court to find the State's actions did not warrant a dismissal with prejudice.

¶35          Manseau's related argument—that the disclosure and continuance forced him to forgo his right to a speedy trial—is similarly unconvincing. The right to a speedy trial in Arizona is procedural, not constitutional or fundamental, and distinct from the speedy trial guarantees of the Sixth Amendment to the U.S. Constitution. *State v. Leota*, 256 Ariz. 351, 356, ¶ 22 (App. 2023). If the court finds time limits have been violated, it must dismiss the case but may do so with or without prejudice. Ariz. R. Crim. P. 8.6. To warrant dismissal with prejudice, Manseau must show the State delayed to gain an advantage or harass him, and that he suffered actual prejudice. *Leota*, 256 Ariz. at 356, ¶ 23.

¶36          The State requested the first continuance because the main detective was not available. It was within the court's discretion to grant it and exclude the time for Ariz. R. Crim. P. 8 purposes. When State diligence could have avoided the error, a delay may violate Ariz. R. Crim. P. 8. *See State v. Heise*, 117 Ariz. 524, 526 (App. 1977). But here, the State offered to accelerate trial while Manseau expressed a preference for delaying by two weeks. On this record, Manseau has not established that the court abused its discretion by continuing trial.

¶37          As to the continuance related to the late disclosure, Manseau had the right to make, and made, the tactical choice of refusing preclusion of the Rule 404(c) witness, with the hope of eliciting impeachment evidence. Instead, he requested the continuance once the court refused to dismiss the case.

¶38          Again, on this record, Manseau's conclusory allegations that the prosecutor and law enforcement colluded to get him convicted are not sufficient to show the State intended to gain an advantage over Manseau or harass him. Manseau asked for extra time to investigate the new information and then opted not to use it at all at trial. With the benefit of time, diligence, and hindsight, he cannot now take the position that the information was still "critical," and its delayed disclosure prejudiced him.

## V.        Alleged Misconduct.

**¶39**        Manseau argues prosecutorial and law enforcement misconduct so infected trial that the only remedy was dismissal with prejudice. He offers a few individual examples and also alleges cumulative error: (1) the State knowingly relied on Emmy's faulty testimony to obtain a conviction on Count IV; (2) a conflicted law enforcement officer intentionally withheld evidence, thus depriving Manseau of a speedy trial; (3) the State improperly compared Manseau to Ted Bundy during closing argument; (4) the State improperly attempted to impeach Manseau's brother on the stand; and (5) the State impugned Manseau's trial counsel and intentionally misrepresented Manseau's claim that Emmy was not sure if the abuse was a dream as "false information," even though the State knew of the specific reference.

**¶40**        Prosecutorial misconduct encompasses any conduct that infringes on a defendant's constitutional rights. *State v. Murray*, 250 Ariz. 543, 548, ¶ 12 (2021). The burden is on Manseau to prove the misconduct infected the trial with unfairness to the point the conviction resulted in a denial of due process. *Id.* at 548, ¶ 13. But because Manseau did not object on misconduct grounds at trial, we only review for fundamental error. *Escalante*, 245 Ariz. at 140, ¶ 12. Under fundamental-error review, Manseau must show that absent the error, a reasonable jury could have reached a different verdict. *Murray*, 250 Ariz. at 548, ¶ 14.

### A.        Faulty Testimony and Withheld Evidence Allegations.

**¶41**        The first two allegations—Emmy's faulty testimony and the allegedly withheld evidence—we have mostly resolved already.

**¶42**        That the State intentionally obtained a Count IV conviction based on insufficient and faulty testimony, merely rehashes the credibility argument we resolved, *supra* Part I. Recasting the issue as misconduct requires proof of error, which we did not find.

**¶43**        The law enforcement officer misconduct assertion rehashes the *Brady*/speedy trial argument we resolved, *supra* Part IV. We only add that Manseau's reliance on *Milke*, and *State v. Minnitt*, 203 Ariz. 431 (2000) is inapposite. Both cases involved proven serial misconduct by officers directly involved with the investigation of the case at bar, not a single, speculative allegation that evidence *in a separate case* was withheld from the prosecutor *in this case*. And that evidence was disclosed in this case, albeit on the eve of an early trial setting. Manseau's conclusory county-wide conspiracy allegations are not enough to overcome this critical distinction.

**B.**         **The Ted Bundy Reference.**

¶44         At closing the State mentioned:

> An example that's very far removed from our case, which is
> why I'm gonna use it. It's not analogous in any type of way.
> But Ted Bundy, super charismatic, super nice, always
> smiling, always looking sharp, together. No one had any idea
> he was out there doing all those heinous crimes. His own wife
> whom he had a child with had no idea. She never would have
> suspected Ted was out there doing all that. Similar to here,
> we know that people we know do heinous things.

¶45         Notably, Manseau's counsel explicitly waived this issue by
stating on the record he chose not to object. Therefore, we review for
fundamental error only. *Escalante*, 245 Ariz. at 140, ¶ 12.

¶46         Two factors determine if an argument constitutes
misconduct: (1) whether the statement called the jury's attention to matters
it should not consider in making its decision, and (2) the probability jurors
were in fact influenced by the argument. *Riley*, 248 Ariz. at 187, ¶ 125. The
law gives attorneys wide, but not unlimited latitude in closing arguments.
*State v. Dansdill*, 246 Ariz. 593, 602, ¶ 29 (App. 2019). We have found
fundamental error where the prosecutor misstates the State's burden of
proof, *Murray*, 250 Ariz. at 554, ¶ 40, or improperly references the potential
consequences of a conviction, *Dansdill*, 246 Ariz. at 604, ¶ 40.

¶47         Considered in context, the State's argument was not
misconduct. In mentioning Ted Bundy, the State explicitly noted that
Manseau's case was "very far removed" and "not analogous" and only
argued that otherwise likeable people may do heinous things. We allow
closing argument analogies that remind jurors of facts in common
knowledge, including referencing Ted Bundy. *See State v. Jones*, 197 Ariz.
290, 306, ¶ 41 (2000) ("The prosecutor . . . drew an analogy between Jones's
attitude at trial and that of well-known murderers [including Ted Bundy].
The error, if any, could not have affected the outcome of the trial."). Even
assuming the comment drew the jury attention to something it should not
consider, namely fear or disgust with Manseau, it is unlikely that one
fleeting statement would influence the jury. *Riley*, 248 Ariz. at 192, ¶ 152.
After all, the jury instructions specifically directed it not to be influenced by
emotions like prejudice, and we presume the jury follows instructions.
*Strong*, 258 Ariz. at 212, ¶ 124. While not a best practice, this isolated
comment did not rise to the level of fundamental error.

## C.        The Brother's Attempted Impeachment.

**¶48**        Manseau also claims the State improperly attempted to impeach his brother on the stand by alleging drug use without any evidence in the record. Manseau objected only to a follow-up question on asked-and-answered grounds. The State is allowed to attack a witness's character for truthfulness on the stand using specific instances of the witness's conduct. Ariz. R. Evid. 608(b). We need not decide whether drug use was relevant to this witness's character for truthfulness. If it was error to ask, it was not fundamental. Manseau's brother firmly denied the allegation, and the State did not attempt to introduce extrinsic evidence to impeach him. Ariz. R. Evid. 608(b). Manseau has not shown this interaction constituted fundamental error.

## D.        Calling the Dream Comment "False Information."

**¶49**        Manseau asserts that the State failed to correct the testifying detective when he stated he did not remember Emmy saying Manseau's abuse could have been a dream, even though the reference was discussed at length before trial. He claims the State then called it "false information" during closing arguments, implying defense counsel lied about it.

**¶50**        Manseau correctly points out that it is not proper for law enforcement to misstate the evidence. *State v. Cannon*, 148 Ariz. 72, 77 (1985). But that is not what happened here. The detective simply stated he did not remember the reference and had not reviewed the DCS report where it allegedly appeared. Manseau never offered that report into evidence, only asking Emmy about it on the stand, to which she responded that a detective had asked her if she had dreamed the abuse but she denied doing so, testifying she was "pretty sure it perfectly happened." Accordingly, Manseau does not demonstrate that the record confirmed Emmy agreed that the abuse could have been a dream.

**¶51**        Manseau argues the prosecutor has an ethical duty to correct false testimony. But we see no error here because Manseau does not demonstrate that the witness lied about his recollection of the claimed statement.

**¶52**        Neither did calling the evidence "false information" impugn the character of defense counsel. Manseau's reliance on *State v. Hulsey*, 243 Ariz. 367, 390, ¶ 99 (2018), is unavailing. There, the prosecutor commented on defense counsel, referring to him as "Don Quixote." Here, the prosecutor commented on the defense's theory of the case. Referring to Manseau's dream theory defense as "false information" was argument about the

strength of inferences to be drawn from that evidence. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 220, ¶ 93 (2018) ("referring to defense evidence as myth or fanciful and attacking defense theories is permissible, so long as it is directed at defense theories rather than defense counsel." (cleaned up)). Nothing in the record suggests the State made any other comments that, taken together with this one, would show an attack on Manseau's attorney.

**¶53**        Finding no error in the individual issues in this section, we cannot find that taken together they demonstrate cumulative error either.

## CONCLUSION

**¶54**        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR